## MERRILL v. SMITH.

1. S. having obtained several judgments against W. M. and J. M., transferred them to J. M., authorizing him to "use said notes and judgments, at his own charge and risk, and it is agreed that I am to pay no costs that has, or may accrue." Held, first, that this was not a contract to pay the debt, or answer for the default of another, within the statute of frauds. Second, that J. M. was bound to see that no use was made of the judgments prejudicial to S., and as he could not himself prosecute a writ of error to reverse the judgments, neither could he defend himself upon the ground, that he did not consent to the prosecution of such a writ by his co-defendant, as the agreement was in legal effect a covenant against such an act.

2. The fact, that J. M., before entering into the contract, was advised by a lawyer, that it would not subject him to the costs of the judgment, S.'was not admissible evidence.

Error to the Circuit Court of Butler.

Assumpsit by the defendant in error, to recover the amount of certain costs, which the plaintiff had been compelled to pay, under the following circumstances: The plaintiff had obtained several judgments against the defendant, and one William Merrill, before a justice of the peace, which he transferred to the defendant, by the following instrument: "For value received, I, John Smyth, do hereby transfer to Jacob Merrill, all my right, title and interest, in, and to eight promissory notes, dated 14th September, 1840, for forty-five dollars each, due one day after date thereof, as well as the judgments thereon. Said notes having been made by William Merrill, and Jacob Merrill. Said Jacob Merrill is hereby authorized to use said notes, and judgments, at his own charge, and risk, and it is agreed that I am to pay no cost that has accrued, or that may accrue thereon. One of the said notes having a credit of five dollars—this 6th September, 1843."

　　　　(Signed,)                              JOHN SMYTH.
                    72

This writing was produced by the defendant, upon a no-tice to him, and was delivered to him at the time of its exe-cution. It was also in proof, that the judgments recited in the transfer, were brought to the supreme court by writs of error, in the name of Willian and Jacob Merrill, from the county court, where they had been carried by *certiorari*, and by this court reversed, but the name of Jacob Merrill, the de-fendant, did not appear on the writ of error bond.

The defendant objected to the introduction of the writing, because not signed by him, but the court overruled the ob-jection.

The plaintiff then proved, that at the time the writing was executed, the defendant proposed to the plaintiff, to pay him the amount due on the judgments, if he would take Alabama money, then at a discount of eleven per cent. This was agreed to, and the defendant, who was a security for his brother William, executed his note for the payment of the money, which, by the agreement, was to be discharged with "Alabama money," and was paid shortly after.

To the introduction of this testimony the defendant ob-jected, but the court overruled the objection.

The defendant then introduced a note, for the payment by the defendant, to the plaintiff, of $446 40, dated 6th Sept. 1843, and proved that it was the same note referred to by the testimony, and moved to exclude all parol evidence respect-ing its terms, but the court refused to withdraw the evidence from the jury.

The defendant also offered to prove, that previous to the purchase of the judgments, he had been advised by a lawyer that if he settled the judgments, he would not be liable for any costs, which was offered in connection with the fact, that he was an illiterate man, as a circumstance to show he had not assumed, or promised to be liable for any costs. This was objected to, and the objection sustained by the court.

The evidence tended to show, that the writs of error were prosecuted by William, and not by Jacob Merrill, and that he knew nothing of it, until the writs of error were sued out, and upon the testimony, the defendant moved the court to charge the jury, that if William Merrill prosecuted the writs

of error, without the knowledge or consent of the defendant, that he was not bound, under the contract with the plaintiff, to pay the costs accruing upon the writs of error, although plaintiff had thereby been mulct in costs, and had paid the same.    This charge the court refused, and charged in legal effect, the converse of the proposition.    Several other charges were moved for, involving the same legal propositions, and refused by the court, to all which the defendant excepted, and which, together with the matters of law arising out of the bill of exceptions, and the overruling the demurrer to the declaration, are now assigned as error.

WATTS, for plaintiff in error.

1. The demurrers should have been sustained.    There is no sufficient consideration stated to support the promise.

2. The facts stated in the declaration show an attempt to convert a record debt into a simple contract, which cannot be done.

3. If it should be considered that the agreement to receive Alabama money was a sufficient consideration to support the promise, it should have been averred in the declaration, that the Alabama money was worth less than gold or silver, and how much.    Without this averment, the court, on demurrer, will presume it to be at a par value.

4. The testimony of Leslie, adding to and varying the written contract, ought to have been excluded.    [See Paysant v. Ware, 1 Ala. 158, and authorities there cited; see also Hair v. La Brouse, 10 Ala. 548; Mead v. Steger, 5 Port. 498; 2 Ala. 280; 5 Ib. 521.]

5. Jacob Merrill, was not bound by the transfer, to protect Smyth against the acts of William Merrill.    According to the terms of said contract, he does not warrant against the acts of any person except himself.

6. If it should be considered that the terms of the transfer are sufficiently broad to cover the acts of William Merrill, Jacob Merrill would not be bound thereby, because said ininstrument is not signed by him.

7. The fact offered to be proven by the lawyer, should have been admitted.    It attempted to lay a foundation for

the explanation of the written contract. [See Paysant v. Ware, *supra.*]

Cook, contra. A writing to pay a sum of money " in the common currency of Alabama," is not an undertaking to pay the sum expressed in coin, but in bank notes—will not sustain a declaration for a sum certain, and unassisted by other proof, will not sustain a recovery upon the common counts. [Carlisle v. Davis, 7 Ala. Rep. 42; Young v. Scott, 5 Ala. Rep. 475.]

An agreement being made without consideration, yet if it be executed, no objection can be made on that ground. [Robertson v. Gardner, 11 Pickering, 150; Bener v. Butler, Wright, 367.]

Forbearance to sue, is a sufficient consideration for a promise to pay the debt of another. [4 J. R. 237.] A gratuitous promise, if the performance be entered upon is binding. [2 J. Cases, 92.] A benefit to one, or trouble to another, is a sufficient consideration. [4 Marsh. 538; 4 Monroe, 532,] Assignment itself is sufficient consideration—so also is the compromise of the suits.

A party may prove a consideration different from the written statement. [2 Marsh, 596; 3 Marsh. 473.] That the party may show the consideration, and parts of the contract not reduced to writing. [3 Ph. Ev. C. & H's. Notes, 1472, 1473, 1474, 1475, 1479.]

ORMOND, J.—The question arising under the demurrer to the special counts of the declaration, and those arising under the decision of the court upon the legal effect of the contract, are in effect the same, and will be considered together.

The statute of frauds has nothing to do with the question here presented. The contract between the plaintiff and defendant, is in effect a purchase by the latter, from the former, of certain judgments against him, and William Merrill, he stipulating for the right to use the judgments in any manner he might think proper, and guaranteeing the plaintiff, against all costs which had then, or might thereafter accrue. This guaranty against the costs, was not a promise to pay the

debt of another, but was a promise to pay his own debt, and for which he was individually responsible, so far as costs had then accrued.   So far as costs might accrue in future, it was in effect a covenant against the acts, both of himself and his co-defendant, the consideration of which was, the transfer of the judgments to him, with the right to use the name of the plaintiff, to reimburse himself, by the aid of the judgments then existing, the money he had paid as the surety of his brother.   A promise to indemnify against the act of another, is in no just sense a promise to pay, or " answer for the debt, default, or miscarriage of another person," and is not within the letter, or spirit of the statute of frauds.

To bring a case within this clause of the statute, there must be a debt, or default of another, against the failure, or omission to perform which, the promissor stipulates.   Thus where an action had been brought by A. against B. for an assault, and C. promised A. that if he would withdraw the record, he would pay him a sum of money, this was held not to be within the statute.   [Read v. Nash, 1 Wilson, 305; see also, Stephens v. Squires, 5 Mod. 205 ; Harris v. Hinchback, 1 Burr. 372.]

So here, the promise was not to answer for any thing which William Merrill was bound to do, or perform, but it was an indemnity against future costs, on the judgments which it was supposed might accrue, in the attempt on the part of Jacob, to enforce them against William Merrill.   It was in truth, a promise to answer for the consequence of his own acts ; for as he had by the transfer of the judgments acquired a right to control them, and had stipulated to be responsible to the plaintiff for all future costs, he was bound to see that no use was made of the judgments prejudicial to the plaintiff. He certainly could not himself prosecute a writ of error to reverse the judgment he had thus purchased, and charge the plaintiff with the costs, neither can he defend himself upon the ground, that he did not consent to the prosecution of such writ by his co-defendant ; for, as already stated, the agreement is in legal effect a covenant on his part against such an act.   This results necessarily from the transfer of the judgments to him, which deprived the plaintiff of all power of of controlling them, and the promise of the defendant to pay

the costs which had then, or might thereafter accrue. By this, he became by substitution owner of the judgments, in the place of the plaintiff, and responsible in future, as the plaintiff would have been, if the transfer had not been made.

It is very clear, that the written evidence of the transfer was competent testimony, of the terms upon which the transfer was made; being delivered to the defendant, as the evidence of the title to the judgments, and received by him, it is in the nature of an admission by him, that the stipulations there recited had been agreed to by him. It was testimony of the same grade as the parol evidence offered, of the terms of the contract.

There was no objection to the proof, that the consideration was the payment by the defendant, of the amount of the judgment, in "Alabama money," by which we understand, the bank notes of the State Bank and its branches. Nor was this varied by the production of the note then executed for the payment of the amount promised, without specifying the medium in which it might be discharged. It is certainly true, that if suit had been brought upon the note by the plaintiff, the defendant could not have averred against it, that there was an agreement to receive bank notes, at par value, in payment. But that is not the question here. It is what was the consideration of the transfer, and what was actually received. Considered in this aspect, the note is in the nature of a receipt, and having performed its functions, and been discharged according to the true contract of the parties, it cannot have the effect of an estoppel, precluding the parties from showing the truth of the case. But we are unable to perceive the importance, or necessity for this proof. The transfer of the judgments was a sufficient consideration for the promise to indemnify the plaintiff against the costs, whether the amount due on the judgments was paid in depreciated bank notes, or in gold and silver.

The legal effect of the contract between the plaintiff and defendant, could not be varied by the proof, that the defendant, before entering into it, was advised by a lawyer, that it would not subject him to the payment of the costs of the

judgments, This does not prove a mistake of fact, if such testimony were admissible in a court-of law, to vary the terms of a contract; but if it amounts to any thing, is an attempt to vary, or alter its legal effect, by proof that the defendant was mistaken as to its legal effect. Considered in this aspect, it is clear it was properly rejected.

We do not perceive any error in the record. Let the judgment be affirmed.